UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**CARL V. SOWARDS,**

      **Plaintiff,**

v.                                                  Case No. _____

**LIBERTY SOURCE PBC CORP.,**

      **Defendant.**

## COMPLAINT

Carl V. Sowards, by counsel, files this Complaint and demands judgment against Liberty Source PBC Corp. on the following grounds and in the following amounts:

## INTRODUCTION

1. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") to remedy unlawful intentional discrimination against white males and unlawful retaliation for opposing such discrimination.

## PARTIES

2. Carl V. Sowards ("Plaintiff" or "Sowards") is an individual residing in the City of Newport News, Virginia.

3. Liberty Source PBC Corp. ("Defendant") is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in the City of Hampton (Fort Monroe), Virginia.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-5 (Title VII of the Civil Rights Act of 1964), and 42 U.S.C. § 1981.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to the claims asserted here occurred in the Eastern District of Virginia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On or about July 28, 2023, Plaintiff filed charge of discrimination number 437-2023-01615 (Exhibit 1) ("EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), and Defendant received a copy of it a short time thereafter.

7. On or about December 11, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue on the EEOC charge (Exhibit 2).

8. This action was filed within 90 days of Plaintiff's receipt of the aforementioned Notice of Right to Sue.

9. Plaintiff has satisfied all procedural prerequisites for the filing of this action.

## FACTS

10. The race of Plaintiff is white.

11. The sex of Plaintiff is male.

12. On or about November 18, 2018, Plaintiff began employment with Defendant as a Data Analyst working at Defendant's facility at Fort Monroe, Virginia, and was so employed from then until in or about February 2023.

13. In or about February 2023, Plaintiff's job title, and the job title of all similarly situated employees of Defendant at Fort Monroe, was changed from Data Analyst to Data Labelling Associate, with no change in job duties, pay, or benefits.

14. At all relevant times, Ms. Amy Howard ("Howard") was Defendant's Vice President of Human Resources. Howard is a white female.

15. As used herein, "HR" means Defendant's human resources department of Defendant's employees who work therein including but not limited to Howard.

16. At all relevant times prior to on or about June 20, 2023, Jasmine Bell ("Bell") was employed by Defendant as a data analyst; on or about June 20, 2023 Bell was made a supervisor of employees including but not limited to Plaintiff. Bell is a black female.

17. At all relevant times, Mr. Selwyn Laing ("Laing") was Defendant's Operations Manager. Laing is a black male.

18. At all relevant times, Robert Siegel ("Siegel") was the Chief Operating Officer of Defendant.

19. From 2020 through approximately June 2023, Defendant forced Plaintiff to attend diversity, equity and inclusion ("DEI") training programs in which white employees and male employees, including Plaintiff, were characterized by derogatory generalizations, were generally demonized based on their race and sex, and were subjected to a race-based and sex-based hostile and offensive work environment.

**20.** Upon information and belief, Defendant, from at least 2020 through the present time, has followed a policy and practice of giving preferential treatment in the terms and conditions of employment, including but not necessarily limited promotion and advancement, to non-white employees over white employees, and giving preferential treatment in the terms and

conditions of employment, including but not necessarily limited promotion and advancement, to female employees over male employees, resulting in unlawful intentional discrimination against white male employees, including but not limited to Plaintiff, on the basis of their race and sex. As used herein, this policy and practice is referred to as Defendant's "**Favoritism Policy and Practice.**"

21. In May of 2023, Plaintiff applied to Defendant for promotion to a vacant position as a Supervisor ("Supervisor Job").

22. Plaintiff was qualified for the Supervisor Job, and was as qualified or more qualified as the person selected by Defendant for the job.

23. The Supervisor Job was given to Bell because Bell was a black female and Plaintiff was a white male, and because of Defendant's Favoritism Policy and Practice.

24. On or about May 31, 2023, Plaintiff applied to Defendant for promotion to a vacant position as a Senior Data Labelling Associate ("Senior Data Labelling Associate Job").

25. Plaintiff was qualified for the Senior Data Labelling Associate Job, and was as qualified or more qualified as the person selected by Defendant for the job.

26. The Senior Data Labelling Associate Job was given to a black female because that employee was a black female and Plaintiff was a white male, and because of Defendant's Favoritism Policy and Practice.

27. On or about June 13, 2023, Plaintiff was summoned to a meeting with a black female member of HR. In that meeting Plaintiff was informed that a newly hired black female coworker of Defendant, Ciarra Hickling ("Hickling"), accused Plaintiff of calling her "stupid." The accusation was false, and Plaintiff informed HR that the accusation was false, but HR refused to listen to Plaintiff and demonstrated no interest in whether the accusation was true or

false. HR was aware Plaintiff did not call Hickling "stupid" or anything else insulting or inappropriate. HR nevertheless reprimanded Plaintiff and informed Plaintiff that the reprimand would be placed in Plaintiff's permanent personnel file. Upon information and belief, HR took those actions because Hickling is a black female and Plaintiff is a white male, and because of Defendant's Favoritism Policy and Practice.

28. On or about July 5, 2023, Plaintiff filled out a required written self-assessment ("Self-Assessment"). In the Self-Assessment, Plaintiff stated, "There are no opportunities to grow at this company, at least for people like me." "People like me" was a reference by Plaintiff to white males. Upon information and belief, HR and Defendant's management understood that was its meaning.

29. On or about July 5, 2023, Plaintiff had a conversation with a coworker, Ms. Dade Brooks ("Brooks"), in which Plaintiff stated to Brooks that Plaintiff felt Defendant was discriminating against Plaintiff because Plaintiff is a white male, and he asked Brooks whether she had heard any other employees of Defendant speak about such discrimination. Plaintiff asked this to Brooks because on two previous occasions Plaintiff overheard a white male employee of Defendant complain that as soon as he applied for a promotion he was wrongfully disciplined by Defendant based on a false and baseless alleged coworker complaint in order to provide a pretextual basis for the promotion to be denied to him because Defendant, and particularly HR, was discriminated against him because he was a white male (Plaintiff heard two different white male employees say that on two separate occasions). Plaintiff saw a parallel between the reprimand issued to him on June 13, 2023 and the disciplinary actions taken against the two white males, whose names he did not know, and Plaintiff hoped to identify one or both of the

employees by speaking with Brooks. Brooks replied that she had no information to provide to Plaintiff.

30. On or about June 17, 2023, Bell requested Plaintiff meet with Bell to discuss Plaintiff's Self-Assessment. Bell represented to Plaintiff that the only persons present at the meeting would be Plaintiff and Bell. The meeting was to take place at 10:30 AM that day.

31. When Plaintiff arrived at the June 17, 2023 10:30 AM meeting, he found Howard and Laing present at the meeting as well as Bell. Howard ran meeting.

32. At the meeting, Howard asked Plaintiff what Plaintiff wished to talk about. Plaintiff replied that he was called to the meeting, and asked Howard the purpose of the meeting and what Howard wished to discuss. Howard asked Plaintiff to explain what Plaintiff was upset about in regard to his job. Plaintiff tried to explain his concerns, but Howard appeared angry and uninterested in listening to Plaintiff, was combative, aggressive, condescending and dismissive, constantly interrupted Plaintiff, raised her voice to Plaintiff, and rejected almost everything Plaintiff said before he could finish saying it.

33. Before Plaintiff could finish explaining his concerns, and before he could begin discussing his discrimination concerns, Howard ended the meeting and ordered Plaintiff to immediately collect his possessions and leave the premises, escorted by Laing, and return the following day.

34. Plaintiff complied with Howard's order, went with Laing to his desk, collected his personal possessions, and left the premises, escorted by Laing. Plaintiff was unsure whether he was required to turn in his security badge and YubiKey, and he did not want to be vulnerable to accusations of breaching any security rule or engaging in any misconduct involving the Defendant's computer system, so he gave them to Laing before he left the premises.

35. Plaintiff did not resign on July 17, 2023, and nothing Plaintiff did or said on July 17, 2023 gave Defendant any reasonable belief Plaintiff resigned.

36. On the morning of July 18, 2023, Plaintiff returned to work at Defendant's facility and, when he arrived, first spoke with Bell just outside the entrance to the facility.

37. In the conversation Plaintiff told Bell that Plaintiff felt he had not been selected for the jobs for which he applied, including the job then held by Bell, because Defendant favored females over males and non-whites over whites.

38. Bell told Plaintiff that she agreed with him, noting that Defendant had pushed her to apply for the position she currently held, which was a position for which Plaintiff had applied.

39. Bell invited Plaintiff to enter the premises, but Plaintiff declined, explaining he wished to wait for Laing to arrive and authorize his entry.

40. A short time later, Laing arrived at the facility, and Plaintiff spoke with him.

41. In that conversation, Plaintiff told Laing that Plaintiff felt Defendant, and specifically Howard and HR, had discriminated against him because he is a white male and exhibited a pattern of discrimination against white males.

42. Laing told Plaintiff that Laing agreed, and suggested he discuss his concerns with Siegel.

43. As Plaintiff and Laing were speaking, Siegal arrived, and spoke to Plaintiff with Laing present.

44. Plaintiff informed Siegel that Plaintiff believed HR discriminated against white males, including Plaintiff, by favoring non-whites and females for promotion. Siegel denied any such discrimination took place. Plaintiff replied that every promotion for which he had applied had been given to a non-white female. Siegel replied by asking Plaintiff why Plaintiff did not

leave if Plaintiff was so unhappy. Siegel expressed no interest or willingness to listed to Plaintiff's concerns.

45. Siegal then informed Plaintiff that Howard told Plaintiff that Plaintiff resigned the day before. Plaintiff denied he had done so. Siegel asked Plaintiff why Plaintiff had given his badge and YubiKey to Laing the day before. Plaintiff explained why he had done so.

46. Siegel then directed Plaintiff to go home and await communication from Defendant concerning the status of his employment, and Plaintiff complied.

47. Plaintiff did not resign from his employment with Defendant.

48. Defendant did not subjectively believe Plaintiff resigned from his employment with Defendant.

49. On July 19, 2023, Plaintiff received from Howard a letter dated July 19, 2023 (Exhibit 3, July 19, 2023 letter from Amy Howard to Carl Sowards, "Termination Letter") stating Defendant resigned from Plaintiff's employment and accepting Plaintiff's resignation.

50. The July 19, 2023 Termination Letter constituted involuntary dismissal of Plaintiff by Defendant.

51. Defendant dismissed Plaintiff because Plaintiff opposed discrimination by Defendant on the basis of race, white, against Plaintiff and similarly situated white employees, and discrimination by Defendant on the basis of sex, male, against Plaintiff and similarly situated male employees.

52. At all relevant times, Defendant had in-depth knowledge and lengthy experience in regard to the prohibitions of federal and state law against employment discrimination on the basis of race, employment discrimination on the basis of sex, and retaliation for opposition to unlawful employment discrimination in the basis of race and sex.

53. Defendant took the actions complained of herein with actual malice toward Plaintiff and with willful and reckless indifference to the federally protected rights of Plaintiff to be free from unlawful discrimination on the basis of race and sex and unlawful retaliation for opposing such discrimination.

## COUNT 1:
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

54. The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

55. Defendant, by the actions described herein, intentionally discriminated against Plaintiff on the basis of his race, white, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

56. As a direct and proximate result thereof, Plaintiff has suffered and will continue to suffer loss of wages and employee benefits, damage to Plaintiff's personal and professional reputation, pecuniary losses including but not limited to job and related expenses, and severe and extreme mental anguish and emotional distress including but not limited to anger, outrage, frustration, embarrassment, depression, anxiety, and loss of enjoyment of life, accompanied by physical symptoms including but not necessarily limited to sleeplessness and impaired concentration.

## COUNT 2:
## RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

57. The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

58. Defendant, by the actions described herein, intentionally discriminated against Smith on the basis of his race, white, in violation of 42 U.S.C. § 1981.

59. As a direct and proximate result thereof, Plaintiff has suffered and will continue to suffer loss of wages and employee benefits, damage to Plaintiff's personal and professional reputation, pecuniary losses including but not limited to job and related expenses, and severe and extreme mental anguish and emotional distress including but not limited to anger, outrage, frustration, embarrassment, depression, anxiety, and loss of enjoyment of life, accompanied by physical symptoms including but not necessarily limited to sleeplessness and impaired concentration.

## COUNT 3:
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

60. The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

61. Defendant, by the actions described herein, intentionally discriminated against Plaintiff on the basis of his sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

62. As a direct and proximate result thereof, Plaintiff has suffered and will continue to suffer loss of wages and employee benefits, damage to Plaintiff's personal and professional reputation, pecuniary losses including but not limited to job and related expenses, and severe and extreme mental anguish and emotional distress including but not limited to anger, outrage, frustration, embarrassment, depression, anxiety, and loss of enjoyment of life, accompanied by physical symptoms including but not necessarily limited to sleeplessness and impaired concentration.

## COUNT 4:
## RETALIATION IN VIOLATION OF TITLE VII

63. The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

64. Defendant, by the actions described herein, intentionally retaliated against Plaintiff for opposing employment practices made unlawful under Title VII.

65. As a direct and proximate result thereof, Plaintiff has suffered and will continue to suffer loss of wages and employee benefits, damage to Plaintiff's personal and professional reputation, pecuniary losses including but not limited to job and related expenses, and severe and extreme mental anguish and emotional distress including but not limited to anger, outrage, frustration, embarrassment, depression, anxiety, and loss of enjoyment of life, accompanied by physical symptoms including but not necessarily limited to sleeplessness and impaired concentration.

## COUNT 5:
## RETALIATION IN VIOLATION OF SECTION 1981

66. The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

67. Defendant, by the actions described herein, intentionally retaliated against Plaintiff for opposing employment practices made unlawful under Section 1981.

68. As a direct and proximate result thereof, Plaintiff has suffered and will continue to suffer loss of wages and employee benefits, damage to Plaintiff's personal and professional reputation, pecuniary losses including but not limited to job and related expenses, and severe and extreme mental anguish and emotional distress including but not limited to anger, outrage, frustration, embarrassment, depression, anxiety, and loss of enjoyment of life, accompanied by

physical symptoms including but not necessarily limited to sleeplessness and impaired concentration.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment against Defendant and as relief seeks the following:

a. Declaratory relief;

b. Injunctive relief prohibiting Defendant from discrimination against Plaintiff and similarly situated white male employees on the basis of race and sex, prohibiting Defendant from retaliating against Plaintiff and other employees for opposing such discrimination, and requiring Defendant to take affirmative action to remedy prior such discrimination and retaliation and prevent such discrimination and retaliation in the future.

c. Back pay in an amount to be determined at trial;

d. Front pay in an amount to be determined at trial;

e. Compensatory damages in the amount of $250,000 or such other amount as may be awarded at trial;

f. Pecuniary damages in an amount to be determined at trial;

g. In the event compensatory and pecuniary damages are not awarded, then nominal damages;

h. Punitive damages in the amount of $750,000 or such other amount as may be awarded at trial;

i. Pre-judgment interest;

j. Post-judgment interest;

  k. Plaintiff's costs and expenses incurred herein including but not limited to expert witness fees and reasonable attorney's fees; and

  l. Such other and further legal and equitable relief as the Court may find just and proper.

## JURY DEMAND

Plaintiff demands TRIAL BY JURY.

              **CARL V. SOWARDS**

              By: /s/ Raymond L. Hogge, Jr.
              Raymond L. Hogge, Jr.
              Virginia State Bar No. 29445
              Counsel for Carl V. Sowards
              Hogge Law
              500 E. Main Street, Suite 1200
              Norfolk, Virginia 23510
              Tel: (757) 961-5400
              Fax: (757) 962-5979
              Cell: (757) 650-3307
              rayhogge@virginialaborlaw.com

              March 6, 2024